IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| KATHY BRANDT and<br>BRUCE BRANDT,<br><br>             **Plaintiffs,**<br><br>v.<br><br>JPMORGAN CHASE BANK, N.A.,<br><br>             **Defendant.** | Case No. 6:24-cv-598 |

### COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COMES the plaintiffs, KATHY BRANDT & BRUCE BRANDT, by and through their attorneys, SMITHMARCO, P.C., and for their complaint against the Defendant, JPMORGAN CHASE BANK, N.A., Plaintiffs state as follows:

### I. PRELIMINARY STATEMENT

1. This is an action for all damages allowable under the Electronic Funds Transfer Act, 15 U.S.C. §1693, et seq, under the Code of Federal Regulations, 16 C.F.R. §681.1, under Fla. Stat. § 670, et seq. and for negligence.

### II. JURISDICTION & VENUE

2. Jurisdiction arises under the EFTA, 15 U.S.C. §1693m and under the CRR, Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367.

3. Venue is proper in this district pursuant to 28 U.S.C. §1391(b).

### III. PARTIES

4. KATHY BRANDT is an individual who was at all relevant times residing in the City of Orlando, County of Orange, State of Florida.

5. BRUCE BRANDT is an individual who was at all relevant times residing in the City of Orlando, County of Orange, State of Florida. (Kathy and Bruce Brandt will be collectively referred to as "Plaintiffs" where not individually indicated.)

6. At all relevant times, Plaintiffs were each a "consumer" as that term is defined by 15 U.S.C. §1693a(6).

7. At all relevant times, Plaintiffs had four (4) asset accounts in their name with Defendant.

8. Plaintiff, Kathy Brandt had a Chase Private Client checking account and savings account of her own, and both Plaintiffs also shared a Chase Private Client joint checking account and a Chase Private joint savings account.

9. At all relevant times, Plaintiffs' Chase Accounts were established to hold funds used primarily for Plaintiff's personal use and/or household expenditures.

10. At all relevant times, Plaintiffs' Chase Accounts were each an "account" as that term is defined by 15 U.S.C. §1693a(2).

11. JPMORGAN CHASE BANK, N.A., (hereinafter, "Defendant") is a business entity that conducts business within the State of Florida. Defendant is incorporated in the State of Florida.

12. At all relevant times, Defendant was a bank that held Plaintiffs' Chase accounts.

13. At all relevant times, Defendant acted through its duly authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

14. At all relevant times, Defendant was a "financial institution" as that term is defined by 15 U.S.C. §1693a(9).

15. At all relevant times, an unknown third party received funds from Plaintiffs' Chase accounts, which were transferred to this person or persons via an electronic terminal, telephonic instruction or computer or magnetic tape after the unknown third party instructed Defendant to transfer funds to said third party from Plaintiffs' Chase accounts.

16. Plaintiffs do not know the unknown third party, never heard of them prior to the events described in this Complaint, and have not now nor never had any relationship, personal or business, with Amber Spice, Monique Peterkin and David Thomas or Leon Wright.

### IV.    ALLEGATIONS
### COUNT I: VIOLATIONS OF THE EFTA

17. On or about November 8, 2023, Plaintiffs received a call from what appeared to be Defendant, as Defendant's contact within Plaintiffs' phone appeared when Plaintiffs' phone rang.

18. The aforementioned phone call on November 8, 2023, showed up on Plaintiffs' phone as being from "Chase Private Banking Mina".

19. Plaintiffs' regular bank representative that assists in managing their accounts is named Mina Neal.  Plaintiffs' contact details for Mina Neal is saved in Plaintiffs' phone as "Chase Private Banking Mina."

20. At that time, the representative informed Plaintiff, Kathy Brandt, that someone was attempting to use her debit card to make purchases in Houston, TX.

21. At that time, the representative further asked Plaintiff, Kathy Brandt, if she was intending to make a $40,000 wire transfer to a person named Leon Wright.

22. Plaintiff then and there advised the caller that she made no attempt to do so, and that any such charge would be fraudulent.

23. The representative then held Plaintiff, Kathy Brandt, on the telephone line for an extended period of time under the auspices of protecting her account.

24. On November 8, 2023, $39,013.66 was debited from Plaintiffs' joint savings account and transferred to Plaintiffs' joint checking account.

25. On November 8, 2023, $40,000 was electronically sent or wired from Plaintiffs' joint checking account to a TD Bank Account in the name of Leon Wright.

26. On November 8, 2023, $20,000 was debited from Plaintiffs' joint savings account and transferred to Kathy's personal checking account.

27. On November 8, 2023, another $20,000 was debited from Plaintiffs' joint savings account and transferred to Kathy's personal checking account.

28. On November 8, 2023, another $13,000 was debited from Plaintiffs' joint savings account and transferred to Kathy's personal checking account.

29. On November 9, 2023, $23,000 was debited from Kathy's own checking account and transferred to Plaintiffs' joint checking account.

30. On November 9, 2023, $70,615.66 was debited from Plaintiffs' joint savings account and transferred to another joint savings account for the purpose of transferring those funds to a checking account so they may be wired out.

31. On November 9, 2023, another $20,000 was debited from Plaintiffs' joint savings account and transferred to Kathy's personal checking account.

32. On November 9, 2023, another $10,000 was debited from Plaintiffs' joint savings account and transferred to Kathy's personal checking account.

33. On November 9, 2023, another $15,000 was debited from Kathy's personal savings account and transferred to Kathy's personal checking account.

34. On November 9, 2023, $53,269.67 was debited from Kathy's personal checking account and sent to another personal checking account for the purpose of transferring those funds to a checking account so they may be wired out.

35. On November 9, 2023, $23,000 was electronically sent or wired from Kathy's personal checking account to a TD Bank account in Miramar, Florida in the name of Amber Spicer.

36. On November 9, 2023, $30,000 was electronically sent or wired from Kathy's personal checking account to a TD Bank account in Mobile Alabama in the name of David Thomas.

37. On November 9, 2023, $22,000 was electronically sent or wired from Kathy's personal checking account to a TD Bank account in Melbourne, Florida in the name of Monique Peterkin.

38. Plaintiffs did not authorize any of these transactions.

39. Plaintiffs did not provide any person with consent to debit funds from Plaintiffs' Chase Accounts on November 8, 2023 and November 9, 2023.

40. Plaintiffs did not provide Defendant with consent for any person to debit funds from Plaintiffs' Chase Accounts on November 8, 2023and November 9, 2023.

41. Altogether on November 8, 2023 and November 9, 2023, $322,901.27 was transferred between Plaintiffs' savings accounts and checking accounts, and $115,000 was transferred out of Plaintiffs' checking accounts.

42. Plaintiffs did not authorize any of the above transfers of funds from any of their savings' accounts.

43. On November 9, 2023, Plaintiffs became aware of attempts by an unknown third party to transfer funds within Plaintiffs' Chase accounts and then transfer funds out of Plaintiffs accounts.

44. On November 9, 2023, client contacted Defendant to notify Defendant of the transfers.

45. November 9, 2023, Plaintiffs provided Defendant with in-person notice to Mina Neal that they disputed the debit of funds by this unknown third-party relative to Plaintiffs' Chase checking and savings accounts.

46. On November 9, 2023, Plaintiffs provided Defendant with information to allow Defendant to identity Plaintiffs' Chase accounts, such as:

    a.    Plaintiffs' Chase Account numbers;

    b.    Plaintiffs' personal identifying information;

    c.    The name under which Plaintiffs' Chase Accounts were registered;

    d.    The date of the transaction which Plaintiffs disputed relative to Plaintiffs' Chase Accounts;

    e.    The amount of the transaction which Plaintiffs disputed relative to Plaintiffs' Chase Account; and,

47. On November 9, 2023, Plaintiffs provided Defendant with notice that the debit of funds by the unknown third-party relative to Plaintiffs' Chase Savings Account and placing it into their checking accounts on November 8, 2023 and November 9, 2023 were unauthorized electronic transfers of funds from Plaintiffs' Chase Accounts.

48. On November 9, 2023, Plaintiffs provided Defendant with notice of the circumstances as to why Plaintiffs believed the debit of funds by the unknown third party on November 8, 2023 and November 9, 2023, was carried out in error, such as:

    a.    Plaintiffs never authorized the debit of funds from Plaintiffs' Chase Account;

    b.    Plaintiffs never provided any other person or entity with permission, consent or authority to debit funds from Plaintiffs' Chase Account;

    c.    Said transactions were entirely inconsistent with Plaintiffs' previous account history;

    d.    Said transactions were performed only after receiving a call from a purported Chase agent.

49.    Plaintiffs received no benefit from the transfer of funds from their Savings Account to their Checking Account, and in fact suffer the damage of losing interest on funds placed in their savings accounts.

50.    Without the unauthorized and unknown transfer of money from Plaintiffs' Chase Savings Account to their Checking Account, there would not have been sufficient funds in their checking accounts to fund the $115,000 of unauthorized and unknown transfers that went out of their Checking Accounts.

51.    To date, Defendant has not conducted a sufficient investigation relative to the error complained of by Plaintiffs.

52.    To date, Defendant has not sufficiently reported the result of any putative investigation it conducted relative to the error complained of by Plaintiffs.

53.    Alternatively, to date, Defendant has not issued Plaintiffs a credit for the funds debited from Plaintiffs' Chase Accounts without authorization.

54.    Presently, Plaintiffs remain without the $115,000.00 debited from Plaintiffs' Chase Accounts as well as any interest that would have been earned had the money been replaced into their savings accounts.

55. On November 17, 2023, Defendant provided a response to Plaintiffs' dispute stating that Defendant determined that the transactions were authorized by Plaintiffs or that they received a benefit from the transactions.

56. In Defendant's response to Plaintiffs' dispute over the unauthorized transfers from his account, Defendant failed to advise Plaintiffs that they may request reproduction of all of the documents which the Defendant utilized in coming to its conclusion that an error did not occur, leaving Plaintiffs without the knowledge and information and the ability to get the information that explained why the transactions Plaintiffs claimed were not authorized, were ostensibly authorized, in violation of 15 U.S.C. §1693f(d).

57. Defendant's conduct, as delineated above, was in violation of 15 U.S.C. §1693f(a).

58. Defendant's conduct, as delineated above, was in violation of 15 U.S.C. §1693f(e)(1) and (2).

59. Defendant's conduct, as delineated above, was in violation of 15 U.S.C. §1693g(a).

60. As a result of Defendant's violations as aforesaid, Plaintiffs have suffered, and continue to suffer mental anguish and emotional distress and out-of-pocket damages.

WHEREFORE, Plaintiffs, KATHY BRANDT & BRUCE BRANDT, by and through their attorneys, respectfully pray for Judgment to be entered in favor of Plaintiffs and against Defendant as follows:

      a.    All actual compensatory damages suffered;

      b.    Statutory damages allowable under 15 U.S.C. §1693m(a)(2)(A);

      c.    Plaintiffs' attorneys' fees and costs; and,

      d.    Any other relief deemed appropriate by this Honorable Court.

## COUNT II: VIOLATION OF FLA ACT 670.

61. Plaintiffs re-allege and incorporate by reference paragraphs 1-60 in this complaint as though fully set forth herein.

62. Fla. Stat. 670.201 requires financial institutions such as Defendant to provide a security procedure as "established by agreement of a customer and a receiving bank for the purpose of: (1) verifying that a payment order or communication amending or cancelling a payment order is that of the customer, or (2) detecting error in the transmission or the content of the payment order or communication.

63. Defendant's security procedures provided to its customers provides "[y]ou are required to activate [Funds Transfer Services] prior to using this service. Prior to scheduling a transfer, you must establish a recipient and the financial institution that holds the recipient account. When you use this service, you will authenticate with a username and password and may, from time to time, be asked to complete additional authentication steps like security questions, one-time codes, and other methods of authentication".

64. Plaintiffs and Defendant have not made any other good faith agreements on any other security procedures.

65. Prior to the transfers delineated above, Plaintiffs did not activate Funds Transfer Services.

66. Prior to the transfers delineated above, Plaintiffs did not establish a recipient or a financial institution that holds a recipient account.

67. Prior to the transfers delineated above, Plaintiffs did not provide any person or authenticate with a username or password.

68. Prior to making the transfers delineated above, no other authorized signer on the account received any call from Defendant.

69. On November 9, 2023, at 1:15 p.m. Defendant sent Plaintiff, Kathy Brandt, an email that was entitled, "Action Needed: Please call us about your wire transfer."

70. The aforementioned email stated that Defendant "placed a hold on your wire as part of our internal review process. For your security, please call us at 1-877-691-8086 to confirm your wire details. We'll cancel your wire on 11/13/23 if we can't reach you or hear from you."

71. On November 9, 2023, upon receiving the aforementioned email, Plaintiff, Kathy Brandt, called the number on the email and spoke with a Chase Representative.

72. Plaintiff, Kathy Brandt, was then and there advised that the wire transfer was already sent nonetheless, despite Plaintiff never calling in to confirm the transaction.

73. Defendant did not accept any payment order from the Plaintiffs in good faith and in compliance with the security procedure of Defendant.

74. Fla. Stat. 670.202(a) provides: "A payment order received by the receiving bank is the authorized order of the person identified as sender **if that person** authorized the order or is otherwise bound by it under the law of agency." (Emphasis added).

75. At no time was any payment order authorized by Plaintiffs.

76. Plaintiffs were not bound to make any payment on behalf of any agent or employee, and was not otherwise bound to make any payment under the law of agency.

77. Any payment instruction to Defendant purporting to instruct a payment from Plaintiffs' Account would erroneously instruct payment to an unintended beneficiary, and therefore Plaintiffs are not responsible for payment of the unauthorized transactions.

78. Plaintiffs have been damaged by being left without their funds as a result of Defendant's violations of the U.C.C. and holding Plaintiffs liable for the erroneous and unauthorized payments in the amount of $115,000.00.

### COUNT III: NEGLIGENCE

79. Plaintiffs re-allege and incorporate by reference paragraphs 1-78 in this complaint as though fully set forth herein.

80. Plaintiffs had personal accounts under the care and protection of Defendant.

81. Defendant allowed an imposter to verify Plaintiffs' account information and transfer large sums of money out of Plaintiffs' Chase Accounts.

82. As a result of Defendant's lack of action in preventing the transferring of large sums of money out of Plaintiffs' Chase Accounts, Plaintiffs have lost $115,000.00.

83. Despite having been made aware by Plaintiffs that Plaintiffs' Chase Accounts had been compromised, and that wire transfers were currently pending to an unknown third party without their authorization or consent, Defendant, in breach of its duty to Plaintiffs, took no action to reverse or freeze the pending transfers.

84. Despite having been made aware by Plaintiffs that Plaintiffs' Chase Accounts had been compromised and spoke with their Chase Private Client representative prior to all of the transactions being completed, Defendant has refused to refund Plaintiffs' stolen funds.

85. As a result of Defendant's actions as detailed above, Plaintiffs suffered actual damages in the form of $115,000.00 in funds.

86. As a result of Defendant's violation as aforesaid, Plaintiffs have suffered, and continue to suffer, personal humiliation, embarrassment, mental anguish and emotional distress.

**COUNT IV VIOLATIONS OF 16 C.F.R. §681.1**

87. Plaintiffs reallege paragraphs 1 through 86 as though fully set forth herein.

88.     The FCRA, at Section 1681m(e) provides for the creation of "red flag" guidelines for financial institutions such as Defendant.  Specifically, 15 U.S.C. §1681m(e) provides:

> "The Federal banking agencies, the National Credit Union Administration, the Federal Trade Commission, the Commodity Futures Trading Commission, and the Securities and Exchange Commission shall jointly, with respect to the entities that are subject to their respective enforcement authority under section 1681s of this title--
> **(A)** establish and maintain guidelines for use by each financial institution and each creditor regarding identity theft with respect to account holders at, or customers of, such entities, and update such guidelines as often as necessary;
>
> **(B)** prescribe regulations requiring each financial institution and each creditor to establish reasonable policies and procedures for implementing the guidelines established pursuant to subparagraph (A), to identify possible risks to account holders or customers or to the safety and soundness of the institution or customers…"  15 U.S.C. §1681m(e)(1).

89.     From the mandate of §1681m(a)(1), the Code of Federal Regulations 16 C.F.R. §681.1 was promulgated, which provided for duties of financial institutions regarding the detection, prevention, and mitigation of identity theft. 16 C.F.R. §681.1.   Pursuant to 16 C.F.R. §681.1(b)(1), an "account" includes a deposit account, such as Claimant's Chase Accounts.

90.     Pursuant to 16 C.F.R. §681.1(b)(3) a "covered account" is an account that a financial institution maintains primarily for personal, family, or household purposes, such as a checking or savings account.

91.   16 C.F.R. §681.1(d)(1)n provides: "Each financial institution or creditor that offers or maintains one or more covered accounts must develop and implement a written Identity Theft Prevention Program (Program) that is designed to detect, prevent, and mitigate identity theft in connection with the opening of a covered account or any existing covered account. The Program must be appropriate to the size and complexity of the financial institution or creditor and the nature and scope of its activities." 16 C.F.R. §681.1(d)(1).

92.   C.F.R. §681.1(d)(2) further provides: "The Program must include reasonable policies and procedures to: (i)  Identify relevant Red Flags for the covered accounts that the financial institution or creditor offers or maintains, and incorporate those Red Flags into its Program; (ii) Detect Red Flags that have been incorporated into the Program of the financial institution or creditor; (iii) Respond appropriately to any Red Flags that are detected pursuant to paragraph (d)(2)(ii) of this section to prevent and mitigate identity theft; and (iv) Ensure the Program (including the Red Flags determined to be relevant) is updated periodically, to reflect changes in risks to customers and to the safety and soundness of the financial institution or creditor from identity theft." C.F.R. §681.1(d)(2).

93.   The multiple transfers of funds between Kathy's personal checking account and personal savings account, the transfers of funds from both Plaintiffs' savings accounts to their checking accounts totaling $322,901.27, and then the wiring out of Plaintiffs' checking accounts the amount of $115,000.00 should have raised red flags and alerted Defendant to the need to implement its identity theft

protections required by the regulations promulgated to enforce the FCRA, including but not limited to:

    a. This was the first time that a wire of funds was attempted on Plaintiffs' Chase Accounts, and now there were multiple wire requests that removed $115,000;
    b. The transactions were wholly inconsistent with any account activity in the past;
    c. The rapid transfer of over $322,000 of funds around Plaintiffs' multiple accounts was not only inconsistent with Plaintiffs account management, but altogether odd transferring on any accounts;
    c. The transactions were the largest transactions performed on the account, and far exceeded any previous electronic transaction;
    e. No call was placed to Plaintiffs prior to any of the wire transfers;
    f. Security procedures provided by Defendant for wire transfers were not followed.

94. Despite the aforementioned red flags, Defendant continued to execute the wire transfers out of Plaintiffs' accounts.

95. Defendant failed to maintain and/or follow any red flag policies despite its duties to protect Plaintiffs' accounts from such thefts.

96. Defendant failed to implement any identity theft protection to prevent the theft of funds from Plaintiffs' accounts.

97. As a result of Defendant's failures, a criminal was able to enter into Defendant's systems, and manipulate a transfer of $322,901.27 between Plaintiffs' accounts, and then $115,000 out of Plaintiffs' accounts without a verification or confirmation from the account holders, the Plaintiffs.

WHEREFORE, Plaintiffs, KATHY BRANDT & BRUCE BRANDT, by and through their attorneys, respectfully pray for Judgment to be entered in favor of Plaintiffs and against Defendant as follows:

    a.    All actual compensatory damages suffered; and

    b.    Any other relief deemed appropriate by this Honorable Court.

## V.    JURY DEMAND

98.    Plaintiffs hereby demand a trial by jury on all issues so triable.

Respectfully submitted,
**KATHY BRANDT &**
**BRUCE BRANDT**


By:   s/ David M. Marco
       Attorney for Plaintiffs

Dated: March 28, 2024

David M. Marco
IL Bar No. 6273315/FL Bar No. 125266
SMITHMARCO, P.C.
7204 Kyle Court
Sarasota, Florida  34240
**Telephone**:  (312) 546-6539
**Facsimile**:  (888) 418-1277
**E-Mail**:    dmarco@smithmarco.com